**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YOLANDA WRIGHT,

                            Plaintiff,

    - against –

THE CITY OF NEW YORK, NEW YORK
DEPARTMENT OF EDUCTION and MIOSOTIS
RAMOS,

                        Defendants.

Civil Case No. 1:23-cv-03149-KPF

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………………..……..6

STATEMENT OF FACTS………………………………………………………………...7

ARGUMENT……………………………………………………………………………...11

    I.    Legal Standard Governing a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6)

    II.    Plaintiff Properly Asserts Her 42 U.S.C § 1983 *Monell* Claim Against Defendant Miosotis Ramos

    III.    None of Plaintiff's Claims are Time Barred

    IV.    Plaintiff Sufficiently States Claims for Disability Discrimination under the ADA, NYSHRL and NYCHRL

    V.    Plaintiff Sufficiently Pled a Failure to Accommodate Claim under the ADA, NYHRL and NYCHRL

    VI.    Plaintiff Sufficiently Pled a Claim for Hostile Work Environment under Title VII, the NYSHRL and the NYCHRL

    VII.    Plaintiff Sufficiently Pled a Claim for Retaliation under the ADA, NYSHRL and NYCHRL

    VIII.    Plaintiff Sufficiently Pled a Claim for Intentional Infliction of Emotional Distress

    IX.    Plaintiff's Request for Punitive Damages and Attorney's Fees Should Not be Stricken

CONCLUSION…………………………………………………………………………..23

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)……………………………………………………12,20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………………..13

*Chauca v. Abraham*, 2017 NY Slip Op 08158……...………………………………………24

*Cifra v. GE*, 252 F.3d 205, 217 (2d Cir. 2001)………………………………………………..21

*Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018)……………………….13

*Clark v. Jewish Childcare Ass'n, Inc*., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015)………………21

*Davis v. N.Y. City Dep't of Educ*., 804 F.3d 231, 235 (2d Cir. 2015)……………………………21

*Doe v. Anonymous Inc*., 2019 U.S. Dist. LEXIS 107886, 2019 WL 2616904…………………..15

*Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)………………………………………15

*Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 17 (2d Cir. 2017)………………………………21

*Freihofer v. Hearst Corp*., 65 N.Y.2d 135, 143, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985)…..21

*Harrington v. City of New York*, 157 AD3d 582, 70 N.Y.S.3d 177 [1st Dept 2018]……………16

*Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999)……………………........................15

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59............................18

*Home Ins. Co. v Am. Home Prods. Corp*., 75 NY2d 196, 203-204 (1990)……………………..23

*Hosking v. Mem. Sloan-Kettering Cancer Ctr*., 186 AD3d 58, 62, 126 N.Y.S.3d 98

    [1st Dept 2020]……………………………………………………………………………..16

*Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)……..22

*Jackson v. Columbus,* 194 F.3d 737…………………………………………………………..14

*Johnson v. Strive E. Harlem Emp. Grp.,* 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)…………..19

*Kpaka v. City Univ. Of N.Y.,* 708 Fed. App'x 703, 705 (2d Cir. 2017)…………………………17

**Cases**                                                                    **Page(s)**

*Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020)…………………………………12

*Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)…………………………………..17

*McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009)………………6

*McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018)…………20

*Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)……………………………………12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 110 (2d Cir. 2013)……...17,21

*Monell v N.Y. C. Dept. of Soc. Serv.,* 436 U.S. 658 (1974)…………………………………..12,13

*Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed.

2d 106 (2002)……………………………………………………………………15

*Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)………………………………14

*Sotomayor v. N.Y.C.*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012)………………………………19

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)…………………………………………..21,22

*Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)……………………………………………19

*Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015)…………………………………………...19

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014)……………………………..21

*Warmin v. New York City Dep't of Educ.,* 2019 U.S. Dist. LEXIS 125774, 2019

WL 3409900……………………………………………………………………..20

*Weixel v. Bd. of Educ. of City of N.Y.,* 287 F.3d 138, 148 (2d Cir. 2002)………………………20

*Zukerman v. GW Acquisition LLC*, No. 20-cv-8742 (VEC), 2021 U.S. Dist. LEXIS 178873

*22 (S.D.N.Y. Sep. 19, 2021)………………………………………………………18

**Statutes**

42 U.S.C.A. § 1201, *et*…………………………………………………………………………...6,14

42 U.S.C. § 1211(7)(a)…………………………………………………………………………..14,15

42 U.S.C. § 1983………………………………………………………………………...…………….13

42 U.S.C.A. §2000e, *et seq*……………………………………………………………………….6

New York State Executive Law § 296, *et seq*………………………………………………….6

New York City Administrative Code § 8-101, *set seq*..………………………………………….6

**Rules**

Fed. R. Civ. P. 12(b)(6)…………………………………………………………………11,18,23

McKinney's CPLR 203(b)…………………………………………………………………15,22

## INTRODUCTION

This is a civil action for monetary damages by Plaintiff against Defendant The City of New York ("City"), Defendant New York Department of Education ("DOE"), and individual Defendant Miosotis Ramos ("Ramos") for disability discrimination, failure to engage in cooperative dialogue, failure to provide reasonable accommodation, hostile work environment, retaliation, aiding and abetting and intentional infliction of emotional distress under: (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq*., and its Amendments ("Title VII"); (b) the Americans with Disabilities Act, 42 U.S.C.A. §1201, *et. seq.*("ADA"); (c) the New York State Executive Law § 296, *et seq.* ("NYSHRL"); the New York City Administrative Code § 8-101, *et seq*. ("NYCHRL") and New York's common law. Plaintiff, who suffers from asthma, was hired as a Teacher for the City to work at the DOE. Thereafter, she was promoted to Assistant Principal ("AP"). After returning to work from a COVID-19 medical accommodation, Plaintiff was harassed and intimidated by her direct supervisor and Principal, Ramos.

Despite the specific allegations well pled in the Complaint and the injuries Plaintiff suffered as a result, Defendants seek to dismiss Plaintiff's claims prior to any discovery taking place. However, Plaintiff set forth amply factual allegations in her Complaint to state claims meeting the plausibility standard. This action was filed because Defendants permitted the discrimination detailed in the Complaint despite Plaintiff's various complaints to her direct supervisor, Ramos and the school's Deputy Superintendent and Chancellor, which were blatantly disregarded. Her complaints enraged her harasser, Ramos leading her to consistently ramp up her hostility towards Plaintiff. Ramos's threat of physical violence and continuous berating of Plaintiff cultivated a hostile work environment intentionally causing her severe emotional distress, weight loss and resulted in psychotherapy and various medication prescriptions

jeopardizing her overall health. Defendants' motion should be denied in its entirety, and the parties permitted to proceed to the discovery stage.

## **STATEMENT OF FACTS**

Plaintiff was hired as a Teacher by Defendants City and DOE in or about September 2003 and was promoted to AP on or about August 28, 2017. (See Dkt. No. 1, Complaint filed April 14, 2023, ¶¶17-18). Plaintiff's supervisor became Ramos, the Principal of P.S. Milton Fein School, and Maribell Torres-Hulla ("Torres-Hulla") was the Deputy Superintendent. Since Plaintiff's twenties, she suffered from asthma. (See Dkt. No. 1, ¶19). On or about August 24, 2020, Plaintiff was provided an accommodation after she requested to work remotely due to the heightened risk for severe illness associated with COVID- 19 as she suffered from asthma, which was approved by Defendant DOE. (See Dkt. No. 1, ¶20). On or about March 26, 2021, Plaintiff returned to her physical work location after working remotely due to her asthma disability. (See Dkt. No. 1, ¶21).

Upon her return, Ramos's conduct toward Plaintiff became very harassing, hostile and pervasive, causing her to sustain physical and mental health problems. (See Dkt. No. 1, ¶22). Ramos verbally attacked Plaintiff on numerous occasions, in front of colleagues and despite Plaintiff asking her to refrain from publicly yelling at her, berated her in staff meetings and issued her illegitimate write ups borne of retaliation. (See Dkt. No. 1, ¶23).

Defendant Ramos also threatened Plaintiff with physical violence if she did not stop complaining to Ramos's superior, the Deputy Superintendent concerning the harassment, leading her to file a police report. (See Dkt. No. 1, ¶24). Plaintiff reported the conduct to Torres-Hulla several times, and Ramos's conduct toward her worsened in retaliation of her complaints. (See Dkt. No. 1, ¶25). On or about March 26, 2021, Plaintiff returned to work after working

remotely, Ramos openly excluded Plaintiff from an activity in front of other staff members and students. (See Dkt. No. 1, ¶26). After Plaintiff returned from her leave and after lodging complaints of Ramos's discrimination and blatant retaliation, Ramos began taking away many of Plaintiff's AP duties, continuously spoke to her in a harsh manner in the presence of other staff members and openly belittled her bringing her to tears on various occasions. (See Dkt. No. 1, ¶27).

Ramos used verbal and physical intimidation tactics to bully Plaintiff, including yelling at her on a regular basis. (See Dkt. No. 1, ¶28). Ramos actively prevented Plaintiff from becoming a Principal by denying her access to the Principal Pipeline Program despite her satisfactory performance qualifying her and also denied her gaining tenure. (See Dkt. No. 1, ¶29). Ramos told Plaintiff she refused to sign any documentation that would support her career advancement ("ALPAP"). (See Dkt. No. 1, ¶30). Plaintiff reported this to Torres-Hulla via email and again in person during a meeting, who then informed Plaintiff that Ramos was not obligated to sign it and supported Ramos's decision. (See Dkt. No. 1, ¶31).

Ramos's harassment and intimidation of Plaintiff continued unbridled, and Torres-Hulla did nothing to stop the conduct despite her knowledge of Plaintiff's complaints. (See Dkt. No. 1, ¶32). On or about December 17, 2021, Plaintiff called Torres-Hulla's cell phone to report Ramos had verbally attacked her after being left out of an activity. While she was speaking to Torres-Hulla, Ramos entered and started yelling at Plaintiff. (See Dkt. No. 1, ¶33). At that time, Torres-Hulla hung up the phone on Plaintiff. (See Dkt. No. 1, ¶34). Plaintiff sent two emails detailing her complaint regarding the discrimination, harassment, hostile work environment and retaliation from her supervisor, and Torres-Hulla never responded. (See Dkt. No. 1, ¶35).

Plaintiff maintained excellent attendance during her employment prior to the

COVID-19 Pandemic, but Ramos's treatment of her began affecting her attendance as it made Plaintiff become physically ill. (See Dkt. No. 1, ¶36). Plaintiff's physician prescribed her medication she did not previously need to help her sleep and help with the developing health conditions due to the hostile work environment, and the DOE's blatant lack of remediation and refusal to relocate her to another public school. (See Dkt. No. 1, ¶37). In or about late-March 2022, Plaintiff was written up for not attending an after-school program to monitor the students, even though she ensured the program was monitored by AP, Brian Schaeffer. She wrote Plaintiff up for occurrences on January 4, 2022, the same day she met with the Deputy Superintendent to provide her additional details regarding the discrimination she was experiencing from Ramos. This write up was incorrectly dated March 17, 2021 and delivered to Plaintiff on March 21, 2022. In response to her complaints, the Deputy Superintendent encouraged Plaintiff to take a leave of absence. (See Dkt. No. 1, ¶38).

On two separate occasions, Plaintiff was improperly written up for not having coverage meanwhile she did secure coverage when taking off work. Defendants issued Plaintiff a second disciplinary letter concerning coverage dated March 31, 2021 but delivered to her on April 1, 2022. The write up concerned coverage during afterschool activities, but she had been forced to attend a disciplinary meeting on February 17, 2022. Plaintiff had ensured coverage already since she was scheduled to attend the Principal Pipeline meeting that same day. (See Dkt. No. 1, ¶39). Ramos also wrote Plaintiff up for composing too "extensive" of emails in response to Plaintiff's pleas for her to jut stop harassing her on a regular basis. (See Dkt. No. 1, ¶40).

In or about April/May 2022, Plaintiff was diagnosed with adjustment disorder but did not disclose this diagnosis to anyone at work and did not request any accommodations or restrictions. (See Dkt. No. 1, ¶41). On or about May 2022, Plaintiff had an interview with the

EEOC. (See Dkt. No. 1, ¶42). On April 11, 2022, Plaintiff had a disciplinary meeting with Ramos regarding attendance and received another write-up. All the absences were medically related *i.e.* ER visit, physician's appointment, from distress and her CT Scan of her heart caused by Ramos's harassment. Plaintiff informed Ramos during this meeting that her behavior was greatly affecting her health in a grave way. In response, Ramos callously provided Plaintiff with a disciplinary letter dated April 25, 2022 for attendance. On May 13, 2022, Plaintiff wrote a rebuttal indicating those days were results of her emotional distress caused by Ramos. (See Dkt. No. 1, ¶43).

Ramos issued a fourth disciplinary letter on June 13, 2022 alleging Plaintiff was conducting personal matters during school hours on May 17, 2022 after she sent emails to the Superintendent and Chancellor regarding the discrimination and retaliation along with the distressing impact on her. Defendant informed Plaintiff she was not granting her tenure. (See Dkt. No. 1, ¶44). Around approximately the same time, Plaintiff obtained a doctor's note requesting she take FMLA and submitted the request to Secretary, Monica Ramos who contacted Human Resources ("HR"). HR responded that it would start when Plaintiff needed to take off. Plaintiff was informed that the FMLA would be applied retroactively once approved by Ramos. (See Dkt. No. 1, ¶45).

On or about June 13, 2022, Plaintiff received a fifth disciplinary write-up from Ramos stating that Plaintiff had deleted notes from a previous meeting's document without authorization, and that Plaintiff's actions demonstrated a lack of professionalism. AP, Brian Schaeffer was present during this meeting. (See Dkt. No. 1, ¶46). On or about June 17, 2022, Plaintiff contacted Ramos' about the status of her FMLA request, but Ramos did not respond. (See Dkt. No. 1, ¶47). On or about June 23, 2022, Plaintiff received a notice from Torres-Hulla stating that Plaintiff's probationary period as an AP would end on August 28, 2023, and she

would be demoted back to Teacher still working underneath Ramos within the same school building only if she signed a release barring Plaintiff from bringing any claims against Defendants at any time in the future. Since Plaintiff refused to sign this agreement, Defendants terminated her. (See Dkt. No. 1, ¶48). In a letter to Ramos and HR, Plaintiff detailed the discrimination and harsh working conditions created by Defendants, including intimidation and bullying tactics, verbal abuse, physical threats and harassment. (See Dkt. No. 1, ¶49). These events greatly impacted Plaintiff's ability to do her job as an AP as well as a Teacher. (See Dkt. No. 1, ¶50).

Prior to her end of employment, Plaintiff filed a safety transfer, attaching supporting medical documentation but was denied as she is not a UFT represented employee. (See Dkt. No. 1, ¶53). After reporting Ramos's discrimination and harassment, Plaintiff has endured severe retaliation, including threats, causing her to file a police report, which the DOE was made aware of immediately. (See Dkt. No. 1, ¶54).

## **ARGUMENT**

### I.    **Legal Standard Governing a Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019) (footnotes and citations omitted). The standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In making this determination, the Court accepts all facts as true and "draw[s] all inferences in [plaintiff's] favor." Id. The question is not whether plaintiffs are "likely to prevail, but whether" they include enough allegations to "nudge[] their claims across the line from conceivable to plausible." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (quotation omitted). Nor must plaintiffs plead a prima facie case.

Mandala v. NTT Data, Inc., 975 F.3d 202, 208 (2d Cir. 2020). Instead, they simply must allege enough facts to "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Citizens United v. Schneiderman, 882 F.3d 374, 380 (2d Cir. 2018) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## II.    Plaintiff Properly Asserts Her 42 U.S.C. § 1983 *Monell* Claim

Plaintiff properly asserts a *Monell* Claim against Defendant DOE and the individual Defendant Ramos under 42 U.S.C § 1983. As stated in Monell v N.Y. C. Dept. of Soc. Serv., 436 U.S. 658 (1974), the exception to the rule of not being able to hold a municipality liable is when the facts supporting the § 1983 claim stem from a municipal policy, custom or practice. Id. at 694. In Plaintiff's case, she sufficiently pled together Defendant DOE's, Defendant Ramos's, Deputy Superintendent Torres-Hulla and even the Chancellor perpetuated a pattern of treating Plaintiff, an employee with a disability *i.e.* asthma significantly less favorably after having received a work from home accommodation from April 24, 2020 to May 26, 2021 due to her heightened risk of falling ill during the COVID-19 Pandemic. After returning to work in person at the school, Defendants routinely targeted Plaintiff for having taken advantage of this approved accommodation through Ramos's berating of Plaintiff, clear over reactions towards her, through public humiliation in meetings in front of other staff, yelling at Plaintiff, physically threatening her, unnecessarily punishing her with depriving her of career opportunities and generating illegitimate write ups of Plaintiff to paper her file more easily effecting a future termination. (See Dkt. 1, ¶¶19-30).

The Supreme Court in *Montell* held the following which is vital to the survival of Plaintiff's §1983 claim:

"Female employees of the Department of Social Services and the Board of Education of the City of New York brought an action challenging the policies of those bodies in requiring pregnant employees to take unpaid leaves of absence before those leaves were required for medical reasons. The United States District Court for the Southern District of New York, 394 F.Supp. 853, found the practice unconstitutional but denied claims for back pay. The Court of Appeals, 532 F.2d 259, affirmed and certiorari was granted. The Supreme Court, Mr. Justice Brennan, held that: (1) local government units were "persons" for purposes of § 1983, the Civil Rights Act of 1871; (2) local governments could not be held liable under a theory of respondeat superior but rather could be held liable only when the constitutional deprivation arises from a governmental custom; (3) the Tenth Amendment did not impose any impediment to liability; (4) the Eleventh Amendment did not preclude imposition of liability except with respect to local government units which are part of the state for Eleventh Amendment purposes; (5) local government officials sued in their official capacity are "persons" under § 1983 in those cases in which local government is suable in its own name, and (6) the deprivation complained of in the instant case arose out of official policy."

*See Monell*, 436 U.S. 658 (1974).

Plaintiff argues that Defendant Ramos is deemed a "person" under § 1983 liable in her official capacity as the Principal of P.S. Milton Fein employed by Defendant DOE based on the practice she adhered to of disfavoring employees who qualified to work from home during the Pandemic and had disabilities and retaliating causing a constitutional deprivation against Plaintiff. Additionally, "[l]ocal governments may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." 42 U.S.C.A. § 1983. Defendant DOE need not have this discriminatory custom in a formal written policy.

Therefore, as the § 1983 Claim is under federal and not state law, the Supreme Court's standard enunciated in *Montell* is applicable hereto and based upon the informal practice and custom of routine discriminatory treatment perpetrated by Defendants, specifically the named individual Defendant Ramos's claim survives.

## III.    None of Plaintiff's Claims are Time Barred

Plaintiff's claims of brought under Title VII and the Americans with Disabilities Act, 42

U.S.C.A. §1201, *et.* ("ADA") against Defendants are not time barred. Pursuant to the continuing violation doctrine, any claims Plaintiff brings under Title VII that accrued prior to May 26, 2021 are not barred by the 300-day statute of limitations, and her NYSHRL and NYCHRL claims against the DOE are not barred by the one-year statute of limitations as Plaintiff experienced a continuous practice of discrimination. Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal citations omitted). "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). The U.S. Supreme Court held in Nat'l R.R. Passenger Corp. v. Morgan, that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). *See* Doe v. Anonymous Inc., 2019 U.S. Dist. LEXIS 107886, 2019 WL 2616904. In this case, Plaintiff pled at least one act of discrimination she experienced during her employment which was in furtherance of Defendants' ongoing discriminatory policy.

Plaintiff was required to file her Charge of Discrimination within 300 days of the alleged discriminatory or retaliatory acts occurring. 42 U.S.C. § 1211(7)(a); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). Each discrete discriminatory or retaliatory act starts a new clock for filing charges related to the act and such claim is time-barred if not filed within the applicable 300-day limit. Id. The last instance of discrimination/retaliation took place on August 28, 2022, which was the effective date of Plaintiff's termination from her employment due to her refusal to

sign Defendants' agreement presented on June 22, 2022 requiring her demotion to Teacher due August 28, 2023, and it called for the end of her probationary period as AP. (See Dkt. 1, ¶¶48-49). Thereafter, Plaintiff filed her Notice of Claim against Defendant City on November 10, 2022. After which, Plaintiff's 50-H was held on February 7, 2023. Plaintiff filed her EEOC Charge of Discrimination on May 18, 2022 with the EEOC issued a Notice of Right to Sue on January 19, 2023 in compliance with the 300-day requirement pursuant to 42 U.S.C. § 1211(7)(a).

The relation back doctrine permits Plaintiff to timely bring her claims as detailed in her Complaint spanning from her return to work on May 26, 2021 to her constructive discharge on August 18, 2022. This doctrine "enables plaintiff to correct pleading error, by adding either new claim or new party, after statutory limitations period has expired, thus giving courts sound judicial discretion to identify cases that justify relaxation of limitations strictures to facilitate decisions on merits if correction will not cause undue prejudice to plaintiff's adversary." McKinney's CPLR 203(b). Defendants' argument that any claims arising prior to July 22, 2021 is misguided (see Dkt. 30, P.7-8 of Defendants' Memorandum of Law dated October 27, 2023) due to the relation back doctrine, which applies to Plaintiff's claims dating back to May 2021 through to the date of her separation. In sum, Plaintiff's claims are not time barred and should proceed forward to be litigated.

**IV.    Plaintiff Sufficiently States Claims of Disability Discrimination under the ADA, NYSHRL and NYCHRL**

To state a claim under the ADA and NYSHRL, the Complaint must allege that (1) plaintiff's employer is subject to the ADA or the NYSHRL; "(2) [she] was disabled within the meaning of the [statute;] (3) she was otherwise qualified to perform the essential functions of her job; and (4) she suffered an adverse employment action because of her disability." Zukerman v. GW Acquisition LLC, No. 20-cv-8742 (VEC), 2021 U.S. Dist. LEXIS 178873, at *22 (S.D.N.Y.

Sep. 19, 2021). To state a claim of disability discrimination under the NYCHRL, plaintiff must allege that: (1) she is a member of a protected class, (2) she was qualified for her position, (3) she adversely or differently treated based on her disability in a way that disadvantaged her and (4) this action occurred under circumstances giving rise to an inference of discrimination. (See e.g., Hosking v. Mem. Sloan-Kettering Cancer Ctr., 186 AD3d 58, 62, 126 N.Y.S.3d 98 [1st Dept 2020]; see also Harrington v. City of New York, 157 AD3d 582, 70 N.Y.S.3d 177 [1st Dept 2018]).

The Complaint sufficiently asserted facts in support of Ramos's disability discrimination under all three statutes immediately after Plaintiff returned from her accommodation due to suffering from asthma by exclusion of Plaintiff from certain activities other Assistant Principals and Teachers were invited to participate in qualifying as one of the adverse actions taken against her. Defendant Ramos did not merely alter Plaintiff's job responsibilities but berated her regularly, yelled at her, made a threat of physical violence against her, generated invalid negative write ups for Plaintiff's file, which in fact did have negative consequences on Plaintiff's employment as well as her physical health and demoted her to Teacher ultimately culminating in her separation. Further, Plaintiff's denial of access to the Principal Pipeline Program, denial of tenure despite her years of stellar performance and probationary discontinuance unless she released Ramos of any and all claims she could potentially bring against her succeed in establishing a *prima facie* case for disability discrimination.

To address Defendants' arguments citing Kpaka v. City Univ. Of N.Y., 708 Fed. App'x 703, 705 (2d Cir. 2017) in support, Plaintiff has properly pled that no other similarly situated i.e. APs at Milton Fein reporting to Ramos with a disability and took an accommodation were treated at all as she was upon her return to work on May 26, 2021. See, e.g., Mandell v. Cnty. of Suffolk,

316 F.3d 368, 379 (2d Cir. 2003) (explaining that plaintiff attempting to "show[] that the employer treated [her] less favorably than a similarly situated employee outside [her] protected group . . . must show she was similarly situated in all material [**4] respects to the individuals with whom she seeks to compare herself"). Under the NYSHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'— because of a discriminatory intent." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013). Finally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59.

Based upon the close temporal proximity of when Defendants' less favorable treatment began towards Plaintiff and the specific acts by Ramos which did in fact negatively affect her terms and conditions of employment in comparison to other Aps without disabilities or accommodations, she has pled disability discrimination. As such, Plaintiff's disability discrimination claim must survive as all of the alleged actions do rise to the level of actionable employment events.

## V.    Plaintiff Sufficiently Pled a Failure to Accommodate Claim under the ADA, NYHRL and NYCHRL

"The ADA prohibits 'discrimination against a qualified individual on the basis of disability in regard to [, inter alia,] . . . discharge of employees.'" McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42. U.S.C. § 12112(a)). Discrimination in violation of the ADA includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability." Id. (quoting 42. U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* case of a failure to accommodate claim under

the ADA, the plaintiff must allege each of the following: (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. McBride, 583 F.3d at 97 (internal quotation omitted). The Complaint does allege that in 2020 Defendant DOE provided Plaintiff with a requested accommodation due to her asthma, but Defendant Ramos swiftly harassed her upon her return to work in person at the school. (See Dkt. 1, ¶¶20-30). Just because the accommodation was granted (as it was objectively reasonable) does not mean Defendants did not punish Plaintiff upon her return from taking it to work from home for several months. However, despite Plaintiff's complaints due to Ramos's discrimination and hostility, Defendants did not engage in any conversation with Plaintiff or grant her request to be transferred to another public school based on Defendant Ramos's discriminatory treatment of solely Plaintiff.

## VI.    Plaintiff Sufficiently Pled a Claim for Hostile Work Environment under Title VII, the NYSHRL and the NYCHRL

To state a claim for hostile work environment pursuant to Title VII, a plaintiff must plead facts that would allow the Court to infer that the complained of conduct: (1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that was subjectively perceived by the plaintiff as hostile or abusive; and (3) created such an environment because of the plaintiff's sex. Patane, 508 F.3d at 113; see also Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015). "[T]o avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse . . . .'" Patane, 508 F.3d at 113 (quoting Terry

v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)). The Second Circuit has "repeatedly cautioned against setting the bar too high." Id.

Under the NYCHRL, unlike under Title VII and the NYSHRL, there is no distinction between a claim premised on the creation of a hostile work environment and one premised on unlawful discrimination: the former is subsumed into the latter, and a plaintiff need only prove that "she has been treated less well than other employees because of a protected trait." Johnson v. Strive E. Harlem Emp. Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (internal quotation marks omitted); see also Sotomayor v. N.Y.C., 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims." (internal citation omitted))). The Complaint claims that Defendant Ramos consistently berated Plaintiff and publicly humiliated her as well as threatening her physically while in the school building, which give rise to a hostile work environment. See Zuckerman v. GW Acquisition LLC, 2021 U.S. Dist. LEXIS 178873, 2021 WL 4267815. In sum, Plaintiff's has alleged enough severe and pervasive facts which caused physical manifestations of distress negatively affecting her health and meeting her burden under Title VII, the NYSHRL and the NYCHRL.

## VII.   Plaintiff Sufficiently Pled a Claim for Retaliation under the ADA, NYSHRL and NYCHRL

To state a claim for retaliation under the ADA or the NYSHRL, Plaintiff's pleading must plausibly suggest that: "[i][]he engaged in protected activity, [ii] the employer was aware of this activity, [iii] []he was subjected to an adverse employment action, and [iv] a causal connection existed between the alleged adverse employment action and [his] protected activity." Warmin v. New York City Dep't of Educ., 2019 U.S. Dist. LEXIS 125774, 2019 WL 3409900; McGuire-

Welch v. House of the Good Shepherd, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order) (citing Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002)). An adverse employment action is defined as one that is "materially adverse with respect to the terms and conditions of employment," such as termination. Flieger v. E. Suffolk BOCES, 693 F. App'x 14, 17 (2d Cir. 2017) (summary order) (quoting Davis v. N.Y. City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015)). Protected activities include requests for reasonable accommodations. *Flieger*, 693 F. App'x at 18. Causation can be shown through indirect proof "that the protected activity was closely followed in time by adverse action." Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (quoting Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001)). To plead retaliation under the NYCHRL, Plaintiff must show that he "took an action opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013) (citations omitted). Plaintiff's complaint to Deputy Superintendent Torres-Hulla in December 2021, which was Ramos's superior due to her treatment of Plaintiff constitutes an action opposing her employer's discrimination. Ramos's conduct thereafter sufficiently detailed retaliatory behavior in the complaint, which had adverse effects on Plaintiff's career and both mental and physical health. Ramos's retaliatory actions occurred after Plaintiff lodged complaints of discrimination based on her disability and request for reasonable accommodation after returning to work in person. Therefore, Plaintiff's retaliation claim should not be dismissed.

Accordingly, Plaintiff sufficiently alleges that Defendants retaliated against her in violation of the ADA, NYSHRL and NYCHRL.

**VIII.    Plaintiff Sufficiently Pled a Claim for Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege that the defendant engaged in "extreme and outrageous conduct, which so transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 157 (2d Cir. 2014) (quoting Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143, 480 N.E.2d 349, 490 N.Y.S.2d 735 (1985)). "To prevail on such a claim, a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." Id. at 157-58 (quoting Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)); see also Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) ("Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Stuto, 164 F.3d at 827. "It is well settled that public policy bars claims sounding intentional infliction of emotional distress against a governmental entity." The Complaint sufficiently details the instances of Defendants' conduct that rises to the level of extreme and outrageous which Plaintiff has pled gravely affected her health requiring medications and psychotherapy.

In sum, Plaintiff's intentional infliction of emotional distress claim should prevail at this early stage of litigation.

## IX.    Plaintiff's Request for Punitive Damages and Attorney's Fees Should Not be Stricken

As espoused by the Court of Appeals in <u>Chauca v. Abraham</u>, 2017 NY Slip Op 08158 after the Second Circuit certified the question of when a plaintiff is entitled to punitive damages under at least the NYCHRL, they "are available for violations of the statute, but does not specify a standard for when such damages should be awarded. The Second Circuit has, by certified question, asked us to determine the applicable standard. We conclude that, consistent with the New York City Council's directive to construe the New York City Human Rights Law liberally, the common law standard as [*2] articulated in <u>Home Insurance Co. v American Home Prods. Corp.</u>, (75 NY2d 196, 203-204 [1990]) applies. Accordingly, a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is 'a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard'". (See <u>Home Ins. Co. v Am. Home Prods. Corp</u>., 75 NY2d 196, 203-204 [1990]). Thereafter, Plaintiff argues Defendants' actions taken against her during her employment rose to the level of willful on Ramos's part, of wanton negligence or recklessness on the part of Defendants City and DOE and all Defendants allowed a conscious disregard for Plaintiff's rights ignoring her complaints and pleas for removal to another school.

Taking into account Plaintiff's arguments asserted above that true controversies do exist as each of her claims against Defendants are sufficiently pled in the Complaint, attorneys fees may be awarded pending the outcome of the matter. Contrary to Defendants' argument Plaintiff resigned, she was constructively discharged after the work environment was made so blatantly hostile she could no longer tolerate working for the DOE reporting to Ramos. (See Dkt. 1). Thus, Plaintiff's request for punitive damages and attorney's fees should remain intact.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) should be denied in its entirety.

Dated:  November 30, 2023          SHEGERIAN & ASSOCIATES


By:  _____*Olivia Clancy*_____
　　　 Olivia M. Clancy, Esq.
　　　 *Attorneys for Plaintiff*
　　　 **YOLANDA WRIGHT**
　　　 90 Broad Street, Suite 804
　　　 New York, New York 10004
　　　 Tel.: (212) 257-8883
　　　 Fax: (212) 804-7299
　　　 oclancy@shegerianlaw.com