UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YOLANDA WRIGHT,

                                    Plaintiff,

                -v.-

THE CITY OF NEW YORK, NEW YORK
DEPARTMENT OF EDUCATION, and
MIOSOTIS RAMOS,

                                    Defendants.

---

23 Civ. 3149 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Yolanda Wright brings this suit against the City of New York (the "City"), the New York City Department of Education (the "DOE"),[1] and Miosotis Ramos ("Ramos") (collectively, "Defendants"), alleging a litany of workplace violations. In brief, Plaintiff claims that she was discriminated and retaliated against after returning to in-person work from a COVID-19-related work accommodation. Among other misdeeds, Plaintiff's complaint alleges claims for disability discrimination, failure to provide a reasonable accommodation, hostile work environment, retaliation, and intentional infliction of emotional distress.

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the remainder of this

---

[1]    Plaintiff refers in her pleading to the "New York Department of Education," without distinguishing between the New York State Education Department and the New York City Department of Education. From context, the Court and Defendants understand Plaintiff to be naming the latter department.

Opinion, the Court grants Defendants' motion in part and denies it in part, dismissing all but Plaintiff's retaliation claims against the DOE and Ramos.

## BACKGROUND[2]

### A.    Factual Background

Plaintiff Wright, a former assistant principal, was hired in 2003 as a teacher for the DOE.  (Compl. ¶ 17).  On August 28, 2017, Plaintiff became a probationary assistant principal for P.S. Milton Fein School (the "School").  (*Id.* ¶¶ 2, 17).  Following her promotion, Plaintiff's supervisor became Defendant Ramos, the principal of the School.  (*Id.* ¶ 18).

The Complaint alleges that Plaintiff has suffered from asthma since her twenties, and Plaintiff identifies asthma as her disability.  (Compl. ¶¶ 19, 21, 61, 63).  On or about August 24, 2020, Plaintiff applied for and was granted an accommodation to work remotely for the 2020-2021 school year, after she reported that, because of her asthma, she was at increased risk of serious illness if exposed to COVID-19.  (*Id.* ¶ 20).  On March 26, 2021, Plaintiff returned to the School in-person.  (*Id.* ¶ 21).

---

[2]    This Opinion draws its facts from Plaintiff's Complaint (the "Complaint" or "Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the Complaint, each of which is incorporated by reference in the Complaint.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

The Court notes that the Complaint appears to contain references to individuals and facts not relevant to this case.  (*See, e.g.*, Compl. ¶ 105).  The Court disregards these pleadings as irrelevant and improperly included.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #30); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #31); and to Defendants' reply memorandum of law as "Def. Reply" (Dkt. #33).

Plaintiff claims that, upon her return to in-person work, she was immediately subjected to a hostile work environment. (Compl. ¶ 2). Specifically, Plaintiff alleges she was harassed and intimidated by her direct supervisor, Ramos. (*Id.*). Among other allegations, the Complaint states that Ramos "verbally attacked [her] on numerous occasions" (*id.* ¶ 23), "issu[ed] her illegitimate write[-]ups" (*id.*), and "threatened [her] with physical violence if she did not stop complaining to [Ramos's] superior" — Deputy Superintendent Maribell Torres-Hulla (*id.* ¶ 24). Plaintiff also alleges that upon her return, Ramos openly excluded her from an activity in front of other staff members and students and spoke to her in a "harsh manner." (*Id.* ¶¶ 26-27).

Plaintiff repeatedly reported Ramos's behavior to Torres-Hulla. (Compl. ¶¶ 35, 38, 44). In response to these complaints, Plaintiff alleges that Ramos's conduct toward her worsened. (*Id.* ¶¶ 25, 26, 35). Plaintiff asserts, for instance, that Ramos "began taking away many of Plaintiff's Assistant Principal duties" (*id.* ¶ 27), "actively prevented Plaintiff from becoming a principal by denying her access to the principal pipeline program despite her satisfactory performance" (*id.* ¶ 29), "denied her gaining tenure" (*id.*), and refused her "safety transfer" to a different school (*id.* ¶ 53).

Plaintiff asserts that, although she maintained "excellent attendance" during her employment prior to the COVID-19 pandemic, Ramos's treatment of her "began affecting her attendance as it made Plaintiff become physically ill." (Compl. ¶ 36). Plaintiff alleges that each of these non-disability-related absences was related to medical conditions caused, at least in part, by the

"distress cause[d] by Defendant Ramos's harassment." (*Id.* ¶ 43).  Despite the nature of her absences, Plaintiff alleges that in or about late March 2022, she received two initial disciplinary letters that detailed — erroneously, if not falsely — instances in which she did not secure coverage when taking off work.  (*Id.* ¶¶ 38-39).[3]

On April 11, 2022, Plaintiff had a disciplinary meeting with Ramos regarding her absences.  (Compl. ¶ 43).  During this meeting, Plaintiff allegedly told Ramos that her behavior was greatly affecting Plaintiff's health.  (*Id.*).  In response, Ramos gave Plaintiff another disciplinary letter, dated April 25, 2022, again for attendance.  (*Id.*).

On or about June 13, 2022, Plaintiff was issued a fourth disciplinary letter, this time alleging that Plaintiff had conducted personal matters during school hours by sending emails to Torres-Hulla regarding "discrimination and retaliation." (Compl. ¶ 44).  In or around that time, Plaintiff received a fifth disciplinary letter stating that she had deleted notes from a prior meeting's document without authorization, which conduct Ramos believed demonstrated a lack of professionalism.  (*Id.* ¶ 46).

Plaintiff further asserts that, during the same time period, she submitted a doctor's note requesting that she take non-disability-related leave under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 (the "FMLA").  (Compl. ¶ 45).  Plaintiff alleges that she was informed by school staff that the leave

---

[3]    Plaintiff adds for completeness that in or about April or May 2022, she was diagnosed with adjustment disorder, but that she "did not disclose this diagnosis to anyone at work and did not request any accommodations or restrictions."  (Compl. ¶ 41).

would be applied retroactively once approved by Ramos.  (*Id.*).  Plaintiff contends that on or about June 17, 2022, Plaintiff contacted Ramos about the status of her FMLA request, but Ramos did not respond.  (*Id.* ¶ 47).

On or about June 23, 2022, Plaintiff received a notice from Torres-Hulla stating that Plaintiff's one-year probationary period as an assistant principal would end on August 28, 2023, and providing Plaintiff an offer to revert back to a teacher position.  (Compl. ¶ 48).  The offer was allegedly conditioned on Plaintiff signing a release barring her from bringing any claims "against Defendants at any time in the future."  (*Id.*).  Plaintiff refused to sign the release (*id.*), and instead was constructively discharged on August 18, 2022.  (*Id.* ¶ 49).  Prior to her departure, on May 18, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), for which she received a right to sue letter on January 19, 2023.  (*Id.* ¶ 7; *id.,* Ex. A, B).

## B.    Procedural Background

Plaintiff initiated the instant lawsuit by filing her Complaint on April 14, 2023.  (Dkt. #1).  On July 14, 2023, Defendants filed a letter motion seeking leave to file a motion to dismiss the Complaint, which motion Plaintiff opposed. (Dkt. #21-22).  The Court held a pre-motion conference to discuss Defendants' anticipated motion on July 28, 2023.  (*See* July 28, 2023 Minute Entry). During the conference, the parties consented to referral to a Magistrate Judge to conduct settlement negotiations and were duly referred the same day.  (Dkt. #24).  On September 11, 2023, a settlement conference was held before

Magistrate Judge Stewart D. Aaron, but settlement efforts were unsuccessful. (*See* September 11, 2023 Minute Entry). Accordingly, the Court directed the parties to submit a joint letter with a proposed schedule for Defendants' anticipated motion to dismiss (Dkt. #27), which letter the Court promptly endorsed (Dkt. #29). Defendants filed their motion and accompanying memorandum of law on October 27, 2023. (Dkt. #30). On November 30, 2023, Plaintiff filed her opposition to Defendants' motion to dismiss. (Dkt. #31). Defendants filed their reply in further support of their motion on December 22, 2023. (Dkt. #33).

## DISCUSSION

### A.    Applicable Law

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in [p]laintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is entitled to relief if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

6

does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.    Analysis**

Plaintiff asserts eleven causes of action against all Defendants, including: (i) disability discrimination based on Plaintiff's asthma condition under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (the "ADA"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290-301 (the "NYSHRL"); (ii) failure to accommodate under the ADA and the NYSHRL; (iii) hostile work environment on the basis of her disability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the NYSHRL, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-134 (the "NYCHRL"); (iv) retaliation under Title VII, the ADA, the NYSHRL, and the NYCHRL; and (v) intentional infliction of emotional distress under common law ("IIED").  Taking each claim in turn, the Court grants in part and denies in part Defendants' motion.

**1.    The Court Dismisses All Claims Against the City and All Federal Claims Against Ramos**

Defendants first assert that Plaintiff's claims against the City, as well as Plaintiff's federal claims against Ramos, are improperly brought.  (Def. Br. 7). The Court agrees.

As an initial matter, Plaintiff's opposition fails to address the portion of Defendants' moving papers that seeks to dismiss the Complaint as against the City. (*See generally* Pl. Opp.). Thus, Plaintiff has abandoned her claims against the City. *See Arma* v. *Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) (stating that courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed" (citation omitted)); *see also Hauschild* v. *U.S. Marshals Serv.*, No. 21 Civ. 7580 (CS), 2023 WL 2413934, at *12 (S.D.N.Y. Mar. 8, 2023) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." (citation omitted)); *Romeo & Juliette Laser Hair Removal, Inc.* v. *Assara I LLC*, No. 08 Civ. 442 (TPG), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage ... a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *cf. Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Even had Plaintiff not abandoned these claims, the Court would nonetheless dismiss all claims against the City as it is an improper party. The City and the DOE are separate legal entities and Plaintiff fails to plead any allegations demonstrating participation by the City sufficient to support a claim. *See Falchenberg* v. *N.Y. Dep't of Educ.*, 375 F. Supp. 2d 344, 347

(S.D.N.Y. 2005) ("[T]he City and DOE are separate and distinct entities ....  In the absence of any allegations demonstrating participation by the City, the complaint fails to state a cause of action against it."); *see also Sotomayor* v. *City of New York*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012) (dismissing all claims against the City of New York), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

Next, the Court dismisses all federal claims against Ramos, as Title VII and the ADA do not provide for individual liability.  *See Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (Title VII), *abrogated on other grounds by Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998); *Gomez* v. *N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016) (ADA).

In her opposition, Plaintiff asserts for the first time that Ramos can be sued in her official capacity as the principal of the School under 42 U.S.C. § 1983, pursuant to *Monell* v. *N.Y.C. Dep't of Soc. Serv.*, 436 U.S. 658 (1974). (Pl. Opp. 12-13 (citing *Monell*, 436 U.S. at 694)).  However, because Plaintiff's *Monell* claim is found nowhere in her Complaint (*see generally* Compl.), she cannot raise it in her opposition.  *See Budhani* v. *Monster Energy Co.*, No. 20 Civ. 1409 (LJL), 2021 WL 5761902, at *2 n.1 (S.D.N.Y. Dec. 3, 2021) (noting that "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings [through] their briefs" (internal quotation marks omitted)); *see also Shah* v. *Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) (holding that "[a] party may not use [her] opposition to a dispositive motion as a means to amend the complaint").  Further, even had the claim been properly raised by Plaintiff, the Complaint is devoid of any

9

allegations implicating a "municipal policy, custom or practice," necessary to sustain a *Monell* claim.  436 U.S. at 694.[4]  Accordingly, the Court dismisses all of the federal claims asserted against Ramos.

### 2.    Plaintiff's Claims Are Partially Time-Barred

Next, Defendants assert that Plaintiff's federal, state, and local claims are partially time-barred.  (Def. Br. 7-8).[5]  Beginning with Plaintiff's federal claims, Title VII and the ADA require a plaintiff to file a claim with the EEOC within 300 days of an alleged adverse action.  *See, e.g.*, *McPartlan-Hurson* v. *Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) (summary order);

---

[4]    Plaintiff does not seek leave to amend her Complaint in the event the Court were to dismiss any of her claims.  (*See* Pl. Opp.).  However, even if she had, the discussion in the text makes clear that any proposed amendment to state a claim under *Monell* would be futile in this case.  *See In re Tether & Bitfinex Crypto Asset Litig.*, No. 19 Civ. 9236 (KPF), 2024 WL 3520363, at *11 (S.D.N.Y. July 24, 2024) (collecting cases for proposition that leave to amend may be denied based on futility).

[5]    In assessing the timeliness of Plaintiff's claims, the Court has found the record evidence challenging.  As to many of Plaintiff's allegations of discrimination, retaliation, and harassment, the Complaint does not situate these in time, merely stating that such statements were recurrent.  (*See, e.g.*, Compl. ¶ 27 (alleging in general terms that after Plaintiff returned from her leave and after lodging complaints of discrimination "Ramos began taking away many of Plaintiff's … duties, continuously spoke to her in a harsh manner … and openly belittled her … on various occasions")).  For the purposes of this motion, the Court views the evidence in the light most favorable to Plaintiff and thus treats such events where the timeline is ambiguous as having taken place within the limitations period.  *See Daniel* v. *City of New York*, No. 20 Civ. 11028 (PAE), 2021 WL 5988305, at *5 (S.D.N.Y. Dec. 16, 2021) ("Those [events] occurring before February 4, 2019 — albeit broadly pled and often without an accompanying date — include acts by Gayle of discrimination against Daniel on the basis of national origin.  For the purposes of this decision, the Court will therefore consider all conduct pled in the SAC as potentially having evidentiary significance, while mindful that under Title VII, conduct must postdate February 4, 2019, and under the NYSHRL and NYCHRL must postdate December 29, 2017, to be the basis for liability."); *see also E.E.O.C.* v. *Rotary Corp.*, 297 F. Supp. 2d 643, 660 (N.D.N.Y. 2003) (considering certain undated allegations under continuing violations doctrine and rejecting other undated allegations as insufficient, rather than untimely); *cf. Lewis* v. *Kaleida Health*, No. 20 Civ. 1860 (LJV), 2022 WL 4485288, at *4 n.7 (W.D.N.Y. Sept. 27, 2022) (deeming allegations that were undated to be time-barred); *Rojas* v. *Hum. Res. Admin.*, No. 18 Civ. 6852 (KAM) (LB), 2022 WL 3716851, at *7 (E.D.N.Y. Aug. 29, 2022) (same), *aff'd*, No. 22-2055-cv, 2023 WL 6380820 (2d Cir. Oct. 2, 2023) (summary order).

*Wade* v. *N.Y.C. Dep't of Educ.*, No. 11 Civ. 5278 (LGS), 2014 WL 941754, at *5 (S.D.N.Y. Mar. 10, 2014), *aff'd*, 667 F. App'x 311 (2d Cir. 2016) (summary order).  Any claim not brought within 300 days is time-barred.  *See Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 109-10 (2002).[6]  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.* at 113.  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.*

Here, Plaintiff filed her EEOC charge on May 18, 2022, making July 22, 2021, the earliest date Plaintiff could allege conduct in violation of Title VII and the ADA.  The Complaint broadly alleges discriminatory and retaliatory conduct beginning from Plaintiff's return to work on March 26, 2021, to her constructive discharge on August 18, 2022.  However, even assuming *arguendo* that Plaintiff's federal claims were timely, for reasons discussed below (*see* Section B.3-7, *infra*), the Court dismisses nearly all of Plaintiff's federal claims for failure to state a claim.  And, as to Plaintiff's surviving federal claim — an ADA claim for retaliation — the discrete discriminatory events on which Plaintiff predicates her claim sit comfortably within the permitted timeframe (*i.e.*, after July 22, 2021), and as such, that claim is not time-barred.

Turning to Plaintiff's state and local law claims, "[i]n general, there is a three[-]year statute of limitations for claims under the NYSHRL and the NYCHRL."  *Wade*, 2014 WL 941754, at *6.  However, New York law provides for

---

[6]    The Court acknowledges that the 300-day period is not jurisdictional, but rather is subject to equitable tolling.  *See generally Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).  However, Plaintiff here does not argue for equitable tolling.

a one-year statute of limitations for claims against schools, school districts,
and boards of education.  *Id.* (citing N.Y. Educ. Law § 3813(2-b)).  Here,
Plaintiff filed her Complaint on April 14, 2023, making April 14, 2022, the
earliest date Plaintiff could allege discriminatory and retaliatory conduct under
the NYSHRL and the NYCHRL.  Accordingly, the Court does not consider
discrete discriminatory acts that occurred prior to April 14, 2022, in analyzing
Plaintiff's claims against the DOE.[7]  However, as with Plaintiff's federal claims,
the Court need not parse through the timeliness of each alleged discriminatory
act to determine which of Plaintiff's claims are time-barred, as the Court
dismisses all of Plaintiff's state and local claims, save Plaintiff's claims for
retaliation, for failure to state a claim.  Similarly, as to Plaintiff's surviving state
and local claims, for reasons discussed below (*see* Section B.6, *infra*), the Court
finds that they sufficiently rely on retaliatory acts within the statutory
limitations period and, as such, are not time-barred.

---

[7]     Although acknowledging that various allegedly discriminatory acts occurred outside the
limitations period, Plaintiff maintains that her allegations are not time-barred because
she experienced a "continuous practice of discrimination."  (Pl. Opp. 14).  "[A]
continuing violation 'occurs over a series of days or perhaps years' and 'is composed of
a series of separate acts that collectively constitute one unlawful employment practice.'"
*Fleming* v. *Verizon New York, Inc.*, 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) (quoting
*Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 117 (2002)).  The exception does not
apply, however, to "'discrete acts of discrimination or retaliation that occur outside the
statutory time period,' even if other acts of discrimination occurred within the statutory
time period."  *Patterson* v. *Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting
*Morgan*, 536 U.S. at 105).  Such discrete acts include "termination, failure to promote,
denial of transfer, or refusal to hire," among others.  *Morgan*, 536 U.S. at 114.

Among Plaintiff's claims, her hostile work environment claims come closest to being
brought within the statutory limitations period via continuing violation doctrine, as a
hostile work environment claim is a "paradigmatic 'continuing violation.'"  *Wheeler* v.
*Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 450 (S.D.N.Y. 2023) (quoting *Morgan*,
536 U.S. at 115-17).  However, because the Court dismisses Plaintiff's claims for hostile
work environment for failure to state a claim (*see* Section B.5, *infra*), the Court need not
resolve the continuing violation issue.

### 3. The Court Dismisses Plaintiff's Disability Discrimination Claims

Having addressed Defendants' threshold arguments, the Court turns to Plaintiff's substantive claims, beginning with those for disability discrimination under the ADA (Count I) and the NYSHRL (Count III).[8]  Both the ADA and the NYSHRL prohibit covered entities from discriminating against qualified individuals on the basis of their disability.  42 U.S.C. § 12112(a); N.Y. Exec. Law § 296(1)(a).  Traditionally, discrimination claims under the ADA and the NYSHRL were analyzed similarly, using the burden-shifting scheme set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (ADA); *Kirkland-Hudson* v. *Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023) (NYSHRL); *see also Wheeler* v. *Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023) (analyzing NYSHRL discrimination claims under "the familiar burden-shifting framework of *McDonnell Douglas*").

Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  To satisfy that burden as to disability discrimination, a plaintiff must show that:

> [i] the defendant is covered by the [applicable statute];
> [ii] plaintiff suffers from or is regarded as suffering from
> a disability within the meaning of the [statute];
> [iii] plaintiff was qualified to perform the essential

---

[8]     In her opposition, Plaintiff also appears to claim disability discrimination under the NYCHRL.  (Pl. Opp. 16).  However, as such a claim was not pleaded in the Complaint (*see generally* Compl.), the Court dismisses this argument.  *See Soules* v. *Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("[A] party is not entitled to amend its complaint through statements made in motion papers[.]" (quoting *Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998))).

> functions of the job, with or without reasonable accommodation; and [iv] plaintiff suffered an adverse employment action because of [plaintiff's] disability or perceived disability.

*Caskey* v. *Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order) (citation omitted).

Under the ADA, "[t]o survive a motion to dismiss an employment discrimination claim, a plaintiff must allege facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Kpaka* v. *City Univ. of New York*, 708 F. App'x 703, 704 (2d Cir. 2017) (summary order) (internal quotation marks omitted); *accord Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015); *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (in order to survive a motion to dismiss, a complaint must allege facts that "give plausible support to a minimal inference of discriminatory motivation"). "A plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Kosack* v. *Entergy Enters.*, *Inc.*, No. 14 Civ. 9605 (VB), 2019 WL 330870, at *6-7 (S.D.N.Y. Jan. 25, 2019) (quoting *Mandell* v. *Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *accord Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

The NYSHRL similarly states that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ..., because of an individual's ... disability ... to discriminate against such individual in compensation or in

terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). In 2019, the NYSHRL was amended to provide that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. In doing so, this amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL." *Livingston* v. *City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see Charles* v. *City of New York*, No. 21 Civ 5567 (JPC), 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering plaintiff's NYCHRL and NYSHRL claims together).

"The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler*, 694 F. Supp. 3d at 451; *compare Arazi* v. *Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (amendment brings NYSHRL "closer to" NYCHRL standard). For the purposes of this motion, the Court will assume that the amended NYSHRL aligns with the NYCHRL.

15

To state a viable discrimination claim under the NYCHRL (and, for purposes of this motion, the post-amendment NYSHRL), a plaintiff need not allege that they suffered an adverse employment action or that "discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment." *Delo* v. *Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023). Rather, they must allege only that they have been "treated less well at least in part because of" their disability. *Id.* (quotation marks omitted) (quoting *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

A plaintiff must allege "differential treatment that is 'more than trivial, insubstantial, or petty.'" *Torre* v. *Charter Comm'cns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting *Gorman* v. *Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)). In addition, a plaintiff must also allege that her disability "was one of the motivating factors, even if it was not the sole motivating factor, for" her unequal treatment. *Melman* v. *Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012); *see also Gittens-Bridges* v. *City of New York*, No. 22-810, 2023 WL 8825342, at *2 (2d Cir. Dec. 21, 2023) (collecting cases).

Here, Plaintiff generally asserts that — after she returned from working remotely — her job responsibilities were altered, she received disciplinary letters, she was denied access to career advancement programs, and her probationary position as assistant principal was not renewed. (*See, e.g.*, Compl. ¶¶ 27, 29, 48). For the purposes of this motion, Defendants do not contest that they are subject to the applicable statutes and that Plaintiff's

asthma constitutes a disability within the meaning of the statutes. (*See* Def. Br. 9). Defendants also do not challenge Plaintiff's qualifications "to perform the essential functions of the job" — satisfying the third element of Plaintiff's *prima facie* case. (*See generally* Def. Br.). *Caskey*, 560 F. App'x at 58.

Instead, Defendants assert that Plaintiff's claims fail because the alleged acts do not qualify as adverse employment actions and because Plaintiff has not plausibly alleged facts to support an inference of discrimination on the basis of her disability. (Def. Br. 8-10). Even assuming *arguendo* that Plaintiff sufficiently alleged adverse employment actions — indeed, even under the treated-less-well standard of the post-amendment NYSHRL — the Court finds that Plaintiff failed to plead that those actions were "in any way related to [her] disability," *Kirkland-Hudson*, 665 F. Supp. 3d at 457, which failure dooms her discrimination claims. As but one example, Plaintiff's allegations that Ramos stripped her of certain responsibilities (Compl. ¶ 114), issued her formal write-ups (*id.* ¶ 44), denied her access to the principal pipeline program (*id.* ¶ 29), and refused to renew her probationary job (*id.* ¶ 48) — even if concerning — fail to identify a single statement or act that suggests even "a minimal inference" that Plaintiff's asthma played a role in Ramos's decision-making. *Dooley* v. *JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order). Plaintiff similarly fails to provide examples of differential treatment of similarly situated assistant principals. *See Sosa* v. *N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019) ("[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those

employees treated differently were similarly situated.").  Accordingly, the Court dismisses Plaintiff's disability discrimination claims under the ADA and the NYSHRL.  *See, e.g.*, *Kirkland-Hudson*, 665 F. Supp. 3d at 457 (dismissing plaintiff's disability claim because she failed to "link the [adverse actions] to her alleged disability … for instance, by identifying any instances of direct animus or differential treatment of similarly situated competitors"); *see also Crawford* v. *Bronx Cmty. Coll.*, No. 22 Civ. 1062 (PGG) (SLC), 2023 WL 11862082, at *10 (S.D.N.Y. July 19, 2023) (report and recommendation) (recommending dismissal of claims under NYSHRL and NYCHRL for failure to "plausibly allege a causal connection between [plaintiff's] disability and her termination"), *adopted in relevant part*, No. 22 Civ. 1062 (PGG) (SLC), 2024 WL 3898361, at *14 (S.D.N.Y. Aug. 21, 2024); *Harris* v. *N.Y.C. Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *11 (S.D.N.Y. Aug. 4, 2022) (dismissing plaintiff's disability discrimination claims under ADA, Rehabilitation Act, NYSHRL, and NYCHRL because complaint did not "allege a single act by [plaintiff's supervisor] which reflected animus towards [plaintiff's] … disability").

### 4.   The Court Dismisses Plaintiff's Failure to Accommodate Claims

Plaintiff next brings claims for failure to accommodate pursuant to the ADA (Count I) and the NYSHRL (Count IV).[9]  While the Complaint does not

---

[9]     In her opposition, Plaintiff appears to reference a failure to accommodate claim under the NYCHRL.  (Pl. Opp. 17).  Once again, as such a claim was not pleaded in the Complaint (*see generally* Compl.), the Court dismisses this argument.  *See Soules*, 882

clearly state the basis for Plaintiff's claims, read most favorably to Plaintiff, the claims appear to be premised on (i) Ramos's treatment of Plaintiff upon her return to in-person work, (ii) the denial of Plaintiff's application for a transfer, and (iii) the failure to grant Plaintiff's request for FMLA leave.  (*See* Compl. ¶¶ 59-69, 82-91).

Under the ADA and the NYSHRL, "discrimination" includes an employer's failure to provide an employee with a reasonable accommodation for her disability.  *See Graves* v. *Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (ADA); *see also* N.Y. Exec. Law § 296(3)(a).  A plaintiff states a *prima facie* failure to accommodate claim by alleging that:  "[i] [she] is a person with a disability under the meaning of the [relevant statute]; [ii] an employer covered by the statute had notice of [her] disability; [iii] with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and [iv] the employer has refused to make such accommodations." *Rodal* v. *Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (ADA); *Vangas* v. *Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 412 (S.D.N.Y. 2014) (NYSHRL).  "Courts apply the same standard for failure to accommodate cases under the ADA, ... NYSHRL, and NYCHRL."  *Arazi*, 2022 WL 912940, at *6 (citing *Rodriquez* v. *City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

In her opposition papers, Plaintiff admits that, in 2020, the DOE provided Plaintiff with the accommodation to work remotely during the 2020-

---

F.3d at 56 ("[A] party is not entitled to amend its complaint through statements made in motion papers[.]" (quoting *Wright*, 152 F.3d at 178)).

2021 school year because her asthma put her at an increased risk of illness from COVID-19.  (*See* Pl. Opp. 18).  Plaintiff alleges, however, that Defendant Ramos "swiftly harassed her upon her return to work in person at the school." (*Id.*).  Allegations of harassment upon return from an accommodation, however, do not establish a failure to accommodate claim pursuant to the ADA or the NYSHRL, as such allegations are devoid of any request for a reasonable accommodation.  Rather, these allegations are more appropriately pleaded as bases for retaliation, which Plaintiff does separately.  (*See, e.g.*, Compl. ¶¶ 70-74 (pleading retaliation claim under ADA for having requested, and taken, an accommodation)).

Plaintiff further alleges that because Defendants did not grant her request to be transferred to another school, they failed to accommodate her disability.  (Pl. Opp. 18).  Again, this claim is devoid of any allegations that could support a failure to accommodate claim under the ADA or the NYSHRL as Plaintiff does not allege any factual pleadings that her request to transfer schools was made to accommodate her asthma condition.  *See Scalera* v. *Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 368 (E.D.N.Y. 2012) ("Plaintiff needs to show … that the requested accommodations were reasonable and connected to her disability.").

Finally, to the extent Plaintiff asserts that Defendants failed to accommodate her request for leave pursuant to the FMLA, the Court finds Plaintiff's argument unavailing.  This is because numerous courts have found, logically, that a request for leave under the FMLA does not constitute a request

for a "reasonable accommodation" under the ADA.  *See Waggel* v. *George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020); *see also Acker* v. *Gen. Motors, L.L.C.*, 853 F.3d 784, 791-92 (5th Cir. 2017).  In particular, the "structure of the [FMLA and the ADA] statutes are fundamentally different," and the "Department of Labor's implementing regulations emphasize [that] claims under each statute must be analyzed separately[.]"  *Waggel*, 957 F.3d at 1373 (citing 29 C.F.R. § 825.702(b)); *see also Acker*, 853 F.3d at 791-92 ("Textual comparison ... demonstrates why requesting FMLA leave alone is not a request for an ADA reasonable accommodation ....  FMLA leave is by nature arguing that he cannot perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he can perform the essential functions of the job." (citing 29 U.S.C. § 2612(a)(1)(D) and 42 U.S.C. § 12111(8))).  What is more, "[a] reasonable accommodation [under the ADA] can never involve the elimination of an essential function of a job," *Shannon* v. *N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003), and here, Plaintiff does not allege that she "could perform the essential functions" of her job as an assistant principal while on leave, such that the absence from work would qualify as a reasonable accommodation.[10]  Accordingly, the Court dismisses Plaintiff's failure to accommodate claims.

---

[10]    The NYSHRL does not make use of the "essential functions" language present in the ADA, but "the inquiry into whether plaintiff can perform in a reasonable manner the activities involved in the job sought under the NYSHRL is the same as the inquiry into whether plaintiff is qualified to perform the essential functions of the job sought under the ADA."  *Russo* v. *Sysco Food Serv. of Albany, L.L.C.*, 488 F. Supp. 2d 228, 238 (N.D.N.Y. 2007); *see also, e.g., Vinokur* v. *Sovereign Bank*, 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010) ("To establish a *prima facie* failure to accommodate claim under the

5. **The Court Dismisses Plaintiff's Hostile Work Environment Claims**

Plaintiff also brings claims for hostile work environment under Title VII (Count V), the NYSHRL (Count VIII), and the NYCHRL (Count IX). As a preliminary matter, to the extent Plaintiff asserts that she was subject to a hostile work environment because of her disability (*see* Compl. ¶¶ 92-96), the Court dismisses any such claims under Title VII, as "Title VII … does not cover claims of disability discrimination." *Harrison* v. *N.Y.C. Hous. Auth.*, No. 01 Civ. 3664 (LAP), 2001 WL 1658243, at *1 (S.D.N.Y. Dec. 26, 2001) (internal quotation and citations omitted).

Turning to Plaintiff's remaining claims under state and local law, as above, the Court will consider them jointly under the more permissive standard of the NYCHRL. Under that standard, a "plaintiff need only demonstrate … that [she] has been treated less well than other employees because of [a protected characteristic]." *Leung* v. *N.Y. Univ.*, 580 F. App'x 38, 40 (2d Cir. 2014) (summary order). "In other words, all that is required to sustain a NYCHRL hostile work environment claim is unequal treatment based upon membership in a protected class." *Fattoruso* v. *Hilton Grand Vacations Co. LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Verne* v. *N.Y.C. Dep't of Educ.*, 697 F. Supp. 3d 30, 61 (S.D.N.Y. 2023) ("The NYCHRL dispenses with the federal 'severe and pervasive' test; instead, a plaintiff bringing a hostile work environment claim under New York City law

---

[NYSHRL] … a plaintiff must demonstrate that … she was otherwise qualified to perform the essential functions of her job with reasonable accommodation." (emphasis added)).

must 'prove[ ] by a preponderance of the evidence that she has been treated less well than other employees because of her [protected status].'" (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009))).

Here, Plaintiff's hostile work environment claims are seemingly premised on Ramos's "humiliating and degrading" conduct toward Plaintiff, including claims that Ramos berated Plaintiff "on numerous occasions," spoke to her "in a harsh manner in the presence of other staff members," and threatened Plaintiff with physical violence. (Compl. ¶¶ 23-24, 26-28). As potentially distressing as these incidents may be, once again, absent from the Complaint are any pleadings that the problematic conduct occurred "because of" Plaintiff's disability. Indeed, the allegations appear to be a result from Ramos's displeasure with Plaintiff's complaints to Torres-Hulla and/or displeasure with Plaintiff's remote work (*see, e.g.*, Compl. ¶¶ 24 (alleging that Ramos threatened her with physical violence if "she did not stop complaining to [Torres-Hulla]"), 27 (alleging Ramos spoke to her in a harsh manner and belittled her "[a]fter Plaintiff returned from her leave … and lodg[ed] complaints of discrimination")), and are therefore more appropriately considered under the rubric of retaliation.

Because Plaintiff failed to provide sufficient evidence that any differential treatment was because of her protected characteristic, the Court dismisses Plaintiff's hostile work environment claims under the NYSHRL and the NYCHRL. *See Zabar* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *11 (S.D.N.Y. May 12, 2020) (dismissing disability-based hostile work environment claims under NYSHRL and NYCHRL because complaint

failed to link alleged comments to protected class); *see also Nieblas-Love* v. *N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (dismissing NYCHRL hostile work environment claim partially because plaintiff "offer[ed] nothing but bare speculation to link [any] behavior to any discriminatory … motive or intent"); *Marseille* v. *Mount Sinai Health Sys., Inc.*, No. 18 Civ. 12136 (VEC), 2021 WL 3475620, at *11 (S.D.N.Y. Aug. 5, 2021) (finding plaintiff had not raised triable question of fact on hostile work environment claim under NYCHRL absent evidence linking conduct to protected characteristics), *aff'd sub nom. Marseille* v. *Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981 (2d Cir. Oct. 26, 2022) (summary order).

### 6. Plaintiff Plausibly States Claims for Retaliation Under the ADA, the NYSHRL, and the NYCHRL

Next, the Court considers Plaintiff's claims for retaliation based on her disability under the ADA (Count II), Title VII (Count VI), the NYSHRL (Count VII), and the NYCHRL (Count X).[11]  As discussed herein, this is where Plaintiff's factual allegations have the most traction.

Plaintiff's claim under the ADA is governed by the *McDonnell Douglas* burden-shifting framework.  *See Summa* v. *Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  "To make out a *prima facie* case of retaliation, a plaintiff must make four showings:  that '[i] she engaged in a protected activity; [ii] her

---

[11]    The Court dismisses Plaintiff's claims for retaliation based on her disability under Title VII because disability is not a protected class under the statute.  *See* 42 U.S.C. § 2000e-2(a)(1) (stating Section 703(a)(1) provides, in relevant part, that it shall be an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

employer was aware of this activity; [iii] the employer took adverse employment action against her; and [iv] a causal connection exists between the alleged adverse action and the protected activity.'" *Id.* (quoting *Schiano* v. *Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006)); *see also Natofsky* v. *City of New York*, 921 F.3d 337, 353 (2d Cir. 2019).

Retaliation victims are provided with broader protection under the NYCHRL — and, for purposes of this motion, under the post-amendment NYSHRL — than their federal counterpart. The elements of a *prima facie* case of retaliation under the three statutes are identical, "except that the plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon* v. *Columbia Univ. Med. Ctr.*, No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted); *accord Stinson* v. *Morningstar Credit Ratings, LLC*, No. 22 Civ. 6164 (JLR), 2024 WL 3848515, at *23 (S.D.N.Y. Aug. 16, 2024) (collecting cases).

Under both standards, the Complaint adequately pleads a claim for retaliation. Beginning with the first element of Plaintiff's federal claim, which is the more stringent, "protected activity" includes formal or informal complaints, protesting, or opposing statutorily prohibited discrimination. *See* 42 U.S.C. § 12203(a) (ADA); *see also* N.Y. Exec. Law § 296(1)(e) (stating a "protected activity," as an element of a *prima facie* case for retaliation under the NYSHRL, refers to action taken to protest or oppose statutorily prohibited

discrimination); *Leroy* v. *Delta Air Lines, Inc.*, 36 F.4th 469, 477 (2d Cir. 2022)
(NYCHRL). A plaintiff "need not prove that her underlying complaint of
discrimination had merit but only that it was motivated by a good faith,
reasonable belief that the underlying employment practice was unlawful."
*Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal
quotation marks and citation omitted). Requesting reasonable
accommodations for a disability may also constitute a protected activity. *See*
*Weixel* v. *Bd. of Educ. of New York*, 287 F.3d 138, 148-49 (2d Cir. 2002) (stating
that a retaliation claim may be based on a request for reasonable
accommodation); *see also Jenkins* v. *N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464,
473 (S.D.N.Y. 2009) (same). Thus, Plaintiff's claims that Ramos retaliated
against her after she "return[ed] to work in person" from her accommodation
and "lodged complaints of discrimination," constitute protected activity. (Pl.
Opp. 20; *see, e.g.*, Compl. ¶¶ 38 (alleging that Plaintiff met with Torres-Hulla in
late-March 2022 "regarding the discrimination she was experiencing"), 44
(alleging that on or around May 17, 2022, Plaintiff emailed Torres-Hulla
"regarding the discrimination and retaliation")). Moreover, the Complaint
alleges facts that demonstrate that Defendants were aware of Plaintiff's
accommodation and complaints, thus satisfying the second element. (*See, e.g.*,
*id.* ¶ 44).

With regard to the third element, Plaintiff's Complaint is replete with
allegations of retaliatory conduct that fall within the relevant limitations
periods, including: Ramos issuing a disciplinary letter and denying Plaintiff

tenure after Plaintiff lodged complaints regarding discrimination (Compl. ¶ 44); refusing to renew Plaintiff's job as assistant principal and demoting her to a teacher's position "only if she signed a release barring [her] from bringing any claims against Defendants" (*id.* ¶ 48); and, on or about August 18, 2022, constructively discharging Plaintiff (*id.* ¶ 49). *See Sivio* v. *Vill. Care Max*, 436 F. Supp. 3d 778, 801 (S.D.N.Y. 2020) ("Termination … is obviously an adverse employment action."); *see also Littlejohn*, 795 F.3d at 316 ("[D]emotion constitutes an adverse employment action."); *United States* v. *N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 407 (S.D.N.Y. 2018) (finding disciplinary letters relating to plaintiff's absences and performances, which clearly had a deleterious effect on plaintiff's employment, "constituted an adverse action").

Finally, Plaintiff alleges a causal connection between the retaliatory actions and both her return from leave and her filing of complaints. (*See, e.g.*, Compl. ¶¶ 27 (alleging that after Plaintiff returned from her leave due to her accommodation, Ramos began "taking away" her assistant principal duties), 44 (alleging that Plaintiff's emails to Torres-Hulla regarding the discrimination on or around May 2022 were closely followed by a disciplinary letter and a denial of tenure in June 2022)). Temporal proximity alone is sufficient to show a causal connection when, as here, "the protected activity and alleged retaliation occurred 'very close' in time.'" *N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d at 408.

In sum, drawing all reasonable inferences in her favor, Plaintiff has plausibly alleged claims for retaliation. Accordingly, the Court denies

Defendants' motion as to Plaintiff's claims for same under the ADA, the NYSHRL, and the NYCHRL.

### 7.    The Court Dismisses Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff's final claim is for IIED under New York law (Count XI).[12]  To maintain such a claim, a plaintiff must establish "[i] extreme and outrageous conduct, [ii] intent to cause severe emotional distress, [iii] a causal connection between the conduct and the injury, and [iv] severe emotional distress." *Sylvester* v. *City of New York*, 385 F. Supp. 2d 431, 441 (S.D.N.Y. 2005) (quoting *Bender* v. *City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).  In New York, liability under an IIED theory "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Schoolcraft* v. *City of New York*, 133 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (quoting *Howell* v. *New York Post Co.*, 81 N.Y.2d 115, 122 (1993)); *accord Turley* v. *ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014).  "[A]lthough providing relief for plaintiffs upon occasion," IIED "remains a highly disfavored tort under New York law."  *Id.* at 158 (internal quotation marks and alteration omitted) (collecting cases).

---

[12]    The Court summarily dismisses the IIED claim as to the DOE.  "It is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity."  *Lauer* v. *City of New York*, 659 N.Y.S.2d 57, 58 (2d Dep't 1997) (collecting cases); *see also Ramsaroop* v. *Dep't of Educ. of City of New York*, No. 20 Civ. 4947 (ER), 2022 WL 376029, at *9 (S.D.N.Y. Feb. 8, 2022) (dismissing IIED claim against NYDOE); *Noel Pane* v. *Town of Greenburgh*, No. 07 Civ. 3216 (LMS), 2012 WL 12886971, at *6 (S.D.N.Y. Mar. 21, 2012) (dismissing IIED claim against a municipality).

In the present case, Ramos's actions do not satisfy the high bar for outrageousness set by New York law.  While Ramos's alleged conduct towards Plaintiff can be characterized as hostile and intimidating, "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of IIED because the conduct alleged is not sufficiently outrageous."  *Blanco* v. *Success Acad. Charter Sch., Inc.*, No. 23 Civ. 1652 (LJL), 2024 WL 965001, at *16 (S.D.N.Y. Mar. 6, 2024) (alteration adopted). Accordingly, Plaintiff's IIED claim is dismissed.  *See Sigmon* v. *Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 681 (S.D.N.Y. 1995) (dismissing IIED claim where plaintiff was subjected to discriminatory comments about her pregnancy and gender, false allegations about her work ethic, and termination of her employment based on her pregnancy and gender).

### 8.    The Court Reserves Judgment on Plaintiff's Damages Claims and Request for Attorneys' Fees and Costs

Finally, Defendants ask the Court to dismiss Plaintiff's applications for punitive damages and attorney's fees and costs.  (Def. Br. 14-15).  The Court denies Defendants' requests as premature.

"Courts routinely deny motions to dismiss requests for punitive damages as procedurally improper because such a request is not a cause of action subject to dismissal."  *City Nat'l Specialty Co.* v. *Ashley Furniture Indus., LLC*, No. 21 Civ. 5521 (EK) (LGD), 2022 WL 2918121, at *3 (E.D.N.Y. July 21, 2022) ("Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss

stage to be premature." (citing *Denis* v. *Home Depot, U.S.A., Inc.*, No. 10 Civ. 3227 (ADS) (SIL), 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014))). "Indeed, a motion to dismiss a punitive damages claim presents a procedural deficiency that obviates the need for the Court to conduct a Rule 12(b)(6) dismissal analysis of the facts pled in support of the claim." *Id.* (collecting cases). Therefore, Defendants' motion to dismiss Plaintiff's punitive damages request is denied.

For similar reasons, Defendants' motion to dismiss Plaintiff's request for attorneys' fees and cost is denied as premature. *See Elliott* v. *Gouverneur Tribune Press, Inc.*, No. 13 Civ. 55 (MAD), 2013 WL 6240489, at *4 (N.D.N.Y. Dec. 3, 2013) (observing that "courts in this circuit have denied a defendant's motion to strike or to dismiss claims for attorney's fees even though the likelihood that plaintiff will be able to recover attorney's fees is small, because dismissal of such claims at the pleading stage would be premature" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with regards to Counts I, III, IV, V, VI, VIII, IX, and XI, and DENIES Defendants' motion with regards to Counts II, VII, and X, as well as Plaintiff's request for punitive damages and attorneys' fees and costs. Defendants DOE and Ramos are hereby ORDERED to file answers on or before **September 21, 2024**. The parties are hereby ORDERED to meet and confer and file a proposed case management plan on or before **September 28, 2024**.

The Clerk of Court is directed to terminate the pending motion at docket number 30.

SO ORDERED.

Dated:    August 27, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge